**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MCGOUGH & ASSOCIATES,

    Plaintiff,

v.                                                                                                     Case No. 07-CV-14978

CRYSTAL N. MILLER and
WDS INVESTIGATIONS, INC.,

    Defendants.

                                                       /

**OPINION AND ORDER DENYING IN PART PLAINTIFF'S "MOTION FOR RELIEF FROM DEFENDANT'S VIOLATIONS OF COURT ORDERS" AND SETTING FURTHER EVIDENTIARY HEARING FOR JUNE 30, 2008**

Before the court is Plaintiff McGough & Associates's ("McGough's") "Motion for Relief from Defendant's Violations of Court Orders," filed on March 19, 2008. The matter has been fully briefed and the court conducted a hearing on the motion on May 14, 2008. During the hearing, the court determined that a further evidentiary hearing was necessary to fully resolve the motion. This order will limit the issues the parties are to address at the continued evidentiary hearing to take place on **June 30, 2008 at 3:00 p.m.**

**I. BACKGROUND**

Defendant Crystal N. Miller is Plaintiff's former Account Manager. She resigned on August 15, 2007 and began working for a direct competitor, Defendant WDS Investigations, Inc. ("WDS") about a month later. Both McGough and WDS, which are around 7 miles from one another, are engaged in the business of corporate surveillance. As an Account Manager at McGough, Defendant Miller had access to a

software database called "Act," which contains client information for existing clients as well as possible leads for potential clients. Plaintiff's complaint alleged that Miller used confidential information from Act that she obtained while employed at McGough to contact potential clients.

Plaintiff initiated this action on November 21, 2007 seeking to enforce a contract Miller signed that contains provisions not to compete, solicit clients or disclose certain confidential information. On December 27, 2007, the court entered a stipulated preliminary injunction that restricted Defendants from taking certain actions until the conclusion of this lawsuit or further order of the court. (*See* 12/27/07 Stip. Order.) On January 7, 2008, the parties filed a stipulation and proposed order of dismissal, which was signed by this court on January 8, 2008, thus closing this case. The Stipulated Order states that Plaintiff's complaint is dismissed without prejudice, but that "[e]ither party may move to reopen the case within thirty (30) days if settlement is not consummated." (Stip. Order at ¶ 1.) The Stipulated Order provides that the court's preliminary injunction shall remain in full force and effect until December 27, 2008. (*Id.* at ¶ 2.) Further, the order states:

> The Parties have agreed to settle this matter and shall memorialize such settlement into an agreement which shall include, *inter alia*, an agreement to continue the preliminary injunction previously entered until December 27, 2008, a full mutual release, and a $5,000 liquidated damages provision which is enforceable by Plaintiff against Defendants if Defendants violate the terms of the preliminary injunction.

(*Id.* at ¶ 3.) Nothing further appears on this court's docket until the instant motion, in which Plaintiff alleges that Defendants are in violation of both the December 27, 2008 preliminary injunction and the January 8, 2008 dismissal order.

2

In Plaintiff's motion, Plaintiff alleges that Defendant WDS sent at least eight letters to at least two of the clients listed on the preliminary injunction order (Siemens Dematic and Herman Miller). The letters, attached to Plaintiff's brief as exhibits E and F, also imply that Plaintiff is not properly licensed in the state of Michigan. Plaintiff claims that the letters improperly solicit business and defame Plaintiff. Plaintiff seeks to (1) reopen the lawsuit, (2) issue sanctions in the form of liquidated damages and (3) allow Plaintiff to amend its complaint to add additional counts.

Defendant Miller responds that she has not worked for WDS since she was fired on March 14, 2008.[1] Miller cites Federal Rule of Civil Procedure 60(b) to argue that Plaintiff must have new evidence in order to reopen the case.[2] Miller claims that she should not be sanctioned because WDS did not get any confidential information from her, and asserts that the names of the companies that WDS contacted were "in plain sight" on the preliminary injunction order itself. (Miller Resp. at 4.) Similarly, she argues that any motion to amend the complaint should be denied because a defamation claim against her would be futile: she asserts that not only is there no evidence that she participated in the solicitation of the clients, but also there is no evidence she defamed Plaintiff. Finally, Miller asserts that Plaintiff is barred from reopening the case because it failed to move to reopen within 30 days of the stipulated dismissal order.

Defendant WDS argues that the court does not have jurisdiction to reopen the case because Plaintiff did not move to reopen the matter within thirty days and the court

---

[1] The letters were, however, sent sometime before she was fired, as Plaintiff became aware of them on February 22, 2008.

[2] This standard for relief from a judgment is inapplicable to the instant matter; Plaintiff does not seek relief *from* a court order but relief *for* a *violation* of the court order.

3

only has jurisdiction "over any dispute between the parties concerning the enforcement and/or interpretation" of the settlement agreement and the preliminary injunction. WDS claims that since the settlement agreement was never executed, the court's jurisdiction cannot arise out of it and, in any event, based on the language of the dismissal order, the court did not "intend to retain jurisdiction beyond the (30) day period." (WDS Resp. at 2.) Further, WDS contends it did not violate any court order. WDS reads the preliminary injunction order narrowly and claims that WDS was not prohibited from contacting the listed companies, only from *using confidential information* to contact the listed companies. WDS argues that it did not use any confidential information to contact the companies and instead WDS's brief explains how WDS found the contacts from the two disputed companies. (WDS Resp. at 5-6.) Further, WDS contends that a liquidated damages provision was not a part of any court order (a violation of which would subject WDS to sanctions) nor were they a part of any enforceable settlement agreement as no agreement was ever memorialized. Further, even if sanctions or damages are awarded, WDS asserts that "[c]learly, the total amount of liquidated damages should be $5,000 per each proceeding, no matter how many acts of contempt are alleged." (WDS Resp. at 10.) WDS asserts that if the liquidated damages provision is enforceable, so is the mutual release, which WDS argues includes all claims arising out of this lawsuit. WDS contends that Plaintiff's request to amend should be denied because amendment would be futile as it did not defame Plaintiff. Finally, WDS argues that Plaintiff had no standing to bring this action in the first place because it was not licensed with the state of Michigan at the time the complaint was filed. (*Id.* at 12-13, 15-19.)

## II.  STANDARD

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."  *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976); *see also Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992).  "The district court's power to summarily enforce settlements extends to cases where the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court." *Henley v. Cuyahoga County Bd. of Mental Retardation and Developmental Disabilities*, No. 04-3406, 2005 WL 1579781, *3 (6th Cir. 2005) (citing *Bowater N. Am. Corp. v. Murray Mach., Inc.,* 773 F.2d 71, 76-77 (6th Cir.1985); *Kukla v. Nat'l Distillers Prods., Co.,* 483 F.2d 619, 621 (6th Cir.1973)).  "[W]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp.,* 958 F.2d at 152 (quoting *White Farm Equip. Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir. 1986)).  Thus, the court will apply Michigan contract law to determine whether a valid settlement agreement was reached.  *See Walbridge Aldinger Co v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich. Ct. App. 1995) ("An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts.").

Under Michigan law, in order to form a valid contract, there must be a meeting of the minds, or mutual assent, with respect to all material terms of the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992).

5

Further, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings oral statements, and other conduct by which the parties manifested their intent." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1994).

### III. DISCUSSION

The parties appeared for a May 14, 2008 hearing, at which time the court observed, and the parties agreed, that an evidentiary hearing would have to be scheduled. At the evidentiary hearing, the primary focus will be whether Miller in any way assisted WDS in contacting any companies listed in the court's December 27, 2007 order or if WDS used confidential information to do so. In making this determination, the court will be particularly interested in discovering what contacts are listed in the Act database and whether they substantially match the contacts listed in the dispute letters. However, in an effort to narrow the issues prior to the evidentiary hearing, the court makes the following determinations, some of which were already pronounced on the record at the May 14, 2008 hearing:

(1) The court finds that a meeting of the minds occurred to settle this matter in accordance with the terms of the January 8, 2008 dismissal order. Despite the fact that this settlement was apparently never memorialized as contemplated in that dismissal order, the court will enforce the January 8, 2008 order as well as the December 27, 2007 preliminary injunction.

(2) Plaintiff's request to reopen the case will be denied. The court observes that the Plaintiff essentially seeks to enforce the December 27, 2007 preliminary injunction, through operation of the January 8, 2008 dismissal order. The case does not need to be reopened in order to enforce either of these orders.

(3) Plaintiff's request to amend the complaint will be denied. The court finds it inappropriate to allow Plaintiff to amend a complaint which has been settled to assert a new claim based on facts occurring after the dismissal. If Plaintiff intends to pursue a cause of action based upon Defendants' alleged acts in mailing out the pertinent letters, Plaintiff must file a new complaint in the appropriate forum.[3]

(4) The court agrees with Plaintiff that its licensing status at the time it filed the complaint, or any time thereafter, is not relevant to whether Defendants breached their settlement obligations in contacting the disputed companies. The court is not persuaded that licensing status, even if lapsed, prevents a corporation from filing suit. While it might prevent a company from properly doing business, it does not have any bearing on Plaintiff's ability to enforce its contracts. In any event, because Defendants agreed to settle this lawsuit, Plaintiff's licensing status has become moot and bears no import on any substantive issue in this proceeding.

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff McGough & Associates's "Motion for Relief from Defendants' Violations of Court Orders" [Dkt. # 15] is DENIED IN PART. Specifically, Plaintiff's request to reopen the case and to amend

---

[3] The court expresses no opinion on the wisdom or validity of asserting such a cause of action. Inasmuch as it is not relevant to the issues currently before this court, the court need not decide whether the parties' settlement forecloses any such action.

the complaint are DENIED. The court will conduct an evidentiary hearing on the remainder of Plaintiff's motion, relating to Defendants' alleged violations of the court's orders and the settlement agreement, on **June 30, 2008 at 3:00 p.m**. The hearing will focus particularly on evidence that bears on whether Plaintiff's proprietary information was used by Defendants in sending out the relevant letters. This could include examining whether Plaintiff's database contains unique information unavailable elsewhere but replicated in Defendant's contacts. Other forms of proof could be informative on this question as well.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: May 21, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 21, 2008, by electronic and/or ordinary mail.

        S/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522.