# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MCGOUGH & ASSOCIATES,

    Plaintiff,

v.                                                     Case No. 07-CV-14978

CRYSTAL N. MILLER and
WDS INVESTIGATIONS, INC.,

    Defendants.
                                                 /

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S "MOTION FOR RELIEF FROM DEFENDANT'S VIOLATIONS OF COURT ORDERS" AND DIRECTING SUBMISSION OF ITEMIZED ATTORNEY FEES

Before the court is Plaintiff McGough & Associates's ("McGough's") "Motion for Relief from Defendant's Violations of Court Orders," filed on March 19, 2008. The court conducted a hearing on the motion on May 14, 2008, and an evidentiary hearing on June 30, 2008. Prior to the evidentiary hearing, the court issued an order narrowing the issues and denying in part the motion.[1] (5/21/08 Order.) The court will now grant in part the motion and award sanctions against Defendant WDS Investigations, Inc.

## I. BACKGROUND[2]

Plaintiff initiated this action on November 21, 2007 seeking to enforce a contract signed by Defendant Crystal N. Miller that contains provisions not to compete, solicit clients or disclose certain confidential information. Defendant Miller is Plaintiff's former

---

[1]Specifically, the court denied as unnecessary Plaintiff's request to reopen the case and to amend the complaint.

[2]The relevant background facts have been set forth in previous orders of the court and are reproduced here for context.

Account Manager.  She resigned on August 15, 2007 and began working for a direct competitor, Defendant WDS Investigations, Inc. ("WDS") about a month later.  Both McGough and WDS, which are around seven miles from one another, are engaged in the business of corporate surveillance.  As an Account Manager at McGough, Defendant Miller had access to a software database called "Act," which contains client information for existing clients as well as possible leads for potential clients.[3]  Plaintiff's complaint alleged that Miller improperly retained confidential information from Act that she obtained while employed at McGough and used that information at WDS to contact potential clients in violation of state law and in violation of a contract she signed while employed at McGough.

On December 27, 2007, the court entered a stipulated preliminary injunction that restricted Defendants from taking certain actions until the conclusion of this lawsuit or further order of the court.  (*See* 12/27/07 Stip. Order.)   On January 7, 2008, the parties filed a stipulation and proposed order of dismissal, which was signed by this court on January 8, 2008, thus closing this case.  The Stipulated Order states that Plaintiff's complaint is dismissed without prejudice, but that "[e]ither party may move to reopen the case within thirty (30) days if settlement is not consummated."  (Stip. Order at ¶ 1.)  The Stipulated Order provides that the court's preliminary injunction shall remain in full force and effect until December 27, 2008.  (*Id.* at ¶ 2.)  Further, the order states:

---

[3]As explained at the evidentiary hearing, the Act database is the "sales Bible," with years of updated notes and contact information.  The Act database was also described as the "brains of the business" and McGough takes steps to keep the information contained within Act confidential, including by limiting the employees who can access the information and restricting the number of copies of the database.

> The Parties have agreed to settle this matter and shall memorialize such settlement into an agreement which shall include, *inter alia*, an agreement to continue the preliminary injunction previously entered until December 27, 2008, a full mutual release, and a $5,000 liquidated damages provision which is enforceable by Plaintiff against Defendants if Defendants violate the terms of the preliminary injunction.

(*Id.* at ¶ 3.) Nothing further appears on this court's docket until the instant motion, in which Plaintiff alleges that Defendants have breached their settlement agreement and are in violation of both the December 27, 2008 preliminary injunction and the January 8, 2008 dismissal order.

In Plaintiff's motion, Plaintiff contends that Defendant WDS sent letters to at least two of the clients listed on the preliminary injunction order (Siemens Dematic and Herman Miller).[4] The letters, attached to Plaintiff's brief as exhibits E and F, also imply that Plaintiff is not properly licensed in the state of Michigan, a "fact" that was never at issue in this lawsuit and the truth of which Plaintiff vehemently denies. Plaintiff claims that the letters improperly solicit business and defame Plaintiff. Plaintiff's motion asks the court to (1) reopen the lawsuit, (2) issue sanctions in the form of liquidated damages and (3) allow Plaintiff to amend its complaint to add additional counts.[5]

The court held in its May 21, 2008 order that a meeting of the minds occurred to settle this matter in accordance with the terms of the January 8, 2008 dismissal order. Despite the fact that this settlement was apparently never memorialized as contemplated in that dismissal order, the court will enforce the settlement, as well as the

---

[4]It has later been alleged, and admitted, that Defendant WDS sent letters to all of the companies on the preliminary injunction order.

[5]The court's May 21, 2008 order denied Plaintiff's requests to reopen the lawsuit and allow Plaintiff to amend the complaint.

3

January 8, 2008 order and the December 27, 2007 preliminary injunction. The sole remaining issue is whether Defendants violated the settlement agreement, the January 8, 2008 order or the December 27, 2007 preliminary injunction and, if so, what relief is available to Plaintiff.

## II. STANDARD

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976); *see also Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992). "The district court's power to summarily enforce settlements extends to cases where the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court."[6] *Henley v. Cuyahoga County Bd. of Mental Retardation and Developmental Disabilities*, No. 04-3406, 2005 WL 1579781, *3 (6th Cir. July 7, 2005) (citing *Bowater N. Am. Corp. v. Murray Mach., Inc.,* 773 F.2d 71, 76-77 (6th Cir. 1985); *Kukla v. Nat'l Distillers Prods., Co.,* 483 F.2d 619, 621 (6th Cir. 1973)). "[W]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp.,* 958 F.2d at 152 (quoting *White Farm Equip. Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir. 1986)). Thus, the court will apply Michigan contract law to determine whether a valid settlement agreement was reached. *See Walbridge Aldinger Co. v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich. Ct. App. 1995) ("An agreement to settle a pending lawsuit is a contract

---

[6]For this reason, the court rejects WDS's argument that the court lacks jurisdiction to enforce the settlement agreement or the court's orders.

4

and is to be governed by the legal principles applicable to the construction and interpretation of contracts.").

Under Michigan law, to form a valid contract there must be a meeting of the minds, or mutual assent, with respect to all material terms of the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). Further, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings oral statements, and other conduct by which the parties manifested their intent." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1994).

### III.  DISCUSSION

While McGough's motion originally identified only two letters sent by WDS to customers listed on the preliminary injunction order, it has since been conclusively established that WDS sent identical letters to each of the thirty companies listed on the court's preliminary injunction order. WDS admitted as much during the evidentiary hearing. Neither is there any debate, nor indeed could there be any debate, that in sending the letters WDS was "directly or indirectly contact[ing] or solicit[ing] clients of Plaintiff covered by [the preliminary injunction] Order." (12/27/07 Order at 3.) Rather, the disagreement between the parties is whether, in sending the letters to these particular companies, WDS was "using confidential information Crystal N. Miller

5

obtained while employed by Plaintiff."[7]  (*Id.*)  The court explained in its May 21, 2008 order that the evidentiary hearing would help determine the answer to this question as follows:

> The hearing will focus particularly on evidence that bears on whether Plaintiff's proprietary information was used by Defendants in sending out the relevant letters.  This could include examining whether Plaintiff's database contains unique information unavailable elsewhere but replicated in Defendant's contacts.  Other forms of proof could be informative on this question as well.

(5/21/08 Order at 8.)

Presumably because of this instruction, the parties spent most of the hearing questioning WDS's President, William D. Sowders, regarding whether he obtained the names and addresses in the letters from the Act database.  The parties went through an exhaustive comparison of the Act database to the names and addresses found in the letters, noting and commenting on, for example, the absence of an "Inc.," following a company's name, the presence of "Ave." in an address, or the use or non-use of a zip-code suffix.  The parties appeared poised to argue whether these minor differences were material enough to prove that the names did not come from the Act database.  However, after a lengthy examination by counsel regarding the Act database, Mr. Sowders was asked why he decided to send the letters to each of the relevant thirty customers.  He quickly admitted that he chose those customers because they were the ones listed on the preliminary injunction order as former customers of McGough.  WDS now argues that the thirty names obtained from the preliminary injunction order do not

---

[7]Although the motion was originally brought against both Miller and WDS, after the hearing Plaintiff agreed that there was no evidence that Miller participated in the solicitation of the clients or otherwise violated the court's orders.  Plaintiff agreed to "dismiss" or release Miller as a target of its motion.

6

constitute "confidential information Crystal N. Miller obtained while employed by Plaintiff." (12/27/07 Order at 3.) The court accepts Mr. Sowders's representation that he obtained the names of the thirty customers directly from the court's injunction order, and that he chose those thirty customer specifically because they were listed on that order. The court, however, disagrees that Mr. Sowders's actions did not violate the parties' settlement or the court's injunction order.

WDS argues that because these names were listed on the preliminary injunction order they were not confidential and because they were provided by McGough's counsel, they were not provided by Crystal Miller. According to WDS, the names must have been provided by Miller to WDS in order to violate the injunction order. The court rejects this interpretation of the parties' agreement, as outlined in the January 8, 2008 order and the December 27, 2007 injunction order.

Instead, the court accepts McGough's well-founded argument that the preliminary injunction order did not prohibit WDS solely from using confidential information that it obtained from Crystal Miller; the order prohibited WDS from using *any* confidential information that *Crystal Miller obtained* while employed by McGough. The court finds, by a preponderance of the evidence, that the names of the thirty customers listed on the preliminary injunction order--customers who conducted business with McGough but not with WDS--constitute confidential information obtained by Crystal Miller while employed by McGough. It bears no import that this confidential information was later disclosed by McGough's counsel in order to complete the injunction order. The names of McGough's clients, particularly those who were not also clients of WDS, were protected by McGough in the Act database as confidential. (*See, supra*, n. 3.)

Further, the addresses of those customers were also protected as confidential. WDS's use of that confidential information therefore, to solicit clients of McGough violates the clear terms of the parties' settlement and both of the court's relevant orders.

As indicated during the evidentiary hearing, the court finds that the mailing of the thirty letters constitutes only one violation of the dismissal and injunction orders, not thirty violations. The act of mailing all the letters, on or around the same day, *en masse* appears to the court as more of a singular action than thirty distinct acts. The court's conclusion may have been different if WDS's letter campaign had stretched over multiple weeks. Under the facts presented to the court, however, the court concludes that WDS violated the court's orders only once. WDS will therefore be ordered to pay liquidated damages, under the terms of the parties settlement, in the amount of $5,000.

McGough also asks for attorney fees. Under the general American rule, unless Congress provides otherwise, parties to a litigation are to bear their own attorney fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney fees."). One exception to this rule, however, is that "courts can enforce their own orders by assessing attorney's fees for the wilfull violation of a court order." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 (1986) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975)); *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 514-15, n. 11 (6th Cir. 2002) (citing cases for the proposition that a court should have the "discretion and flexibility to exercise its inherent authority to address various impermissible litigation

practices as identified in this Circuit.")). Indeed, "the district court has supervisory power to regulate the conduct of attorneys and parties before it, which may include awarding attorney fees." *Jaynes v. Austin*, 20 F. App'x 421, 427 (6th Cir. 2001) (citing *United States v. Payner*, 447 U.S. 727 (1980); *Chambers v. NASCO. Inc.*, 501 U.S. 32, (1991)).

While the act of mailing thirty letters *en masse* to each of the thirty companies listed in the injunction order does not constitute more than one act for the purpose of liquidated damages analysis, on the question of Defendant's wilfulness the nature of that "one act" is relevant. The deliberation involved in Defendant's choice to pursue these companies and attack its competitor is made plain by the breadth of the attack and the nature of the communication, and contributes significantly to the evidence persuading the court to find that WDS did indeed willfully violate the court's December 27, 2007 and January 8, 2008 orders. WDS's actions exhibit bad faith not only in contravention of the parties' settlement agreement, but also in contravention of this court's authority and clear orders. The court will therefore award attorney fees to McGough.

### III. CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff McGough & Associates's "Motion for Relief from Defendants' Violations of Court Orders" [Dkt. # 15] is GRANTED IN PART and WDS is DIRECTED to pay McGough $5,000 in liquidated damages for its violation of the parties' settlement agreement.[8]

---

[8]In its post-hearing brief, McGough also requests that the court order WDS to produce its computers for inspection to determine whether WDS is in possession of the Act database. The court denies both of these requests as outside the scope of relief

9

IT IS FURTHER ORDERED that McGough is DIRECTED to submit an itemization of all reasonable attorney fees resulting from WDS's violations of the court's December 27, 2007 and January 8, 2008 orders by **October 8, 2008**. The itemization should include, at a minimum, the hourly rate of the attorney(s) involved, a brief description of the work performed, the number of hours attributed to each task, and any other relevant information the court will need to perform a lodestar analysis. WDS may submit any objections by **October 15, 2008**.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2008, by electronic and/or ordinary mail.

    S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

---

provided by the settlement agreement, dismissal order or injunction order.

S:\Cleland\JUDGE'S DESK\C3 ORDERS\07-14978.MCGOUGH.ViolationCourtOrder.2.wpd